MAYER BROWN LLP
John P. Zaimes (SBN 91933)
 *jzaimes@mayerbrown.com*
Ruth Zadikany (SBN 260288)
 *rzadikany@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 229-9545
Facsimile: (213) 625-0248

MAYER BROWN LLP
Archis A. Parasharami (DC Bar No. 477493)
(admitted *pro hac vice*)
 *aparasharami@mayerbrown.com*
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Attorneys for Defendant
LYFT, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL NOKCHAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LYFT, INC.,<br><br>Defendant. | Case No. 3:15-cv-03008-JCS<br><br>**DEFENDANT LYFT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Date:  August 19, 2016<br>Time:  11:00 a.m.<br>Courtroom:  G, 15th Floor<br><br>Honorable Joseph C. Spero |

**TABLE OF CONTENTS**

Page

I.   SPOKEO HOLDS THAT NOKCHAN IS REQUIRED TO ALLEGE CONCRETE HARM BEYOND THE BARE VIOLATION OF ONE OF THE FCRA'S REQUIREMENTS ................................................................................ 2

II.  NOKCHAN HAS FAILED TO ALLEGE CONCRETE "INTANGIBLE" HARM ......... 5

    A.   Nokchan's Analogy To Informational Injury Fails ................................................ 6

    B.   Nokchan's "Invasion Of Privacy" Argument Does Not Satisfy Spokeo's Test For Identifying Concrete "Intangible" Injuries ............................................. 10

    C.   Nokchan's Complaint Should Be Dismissed Without Prejudice.......................... 15

III. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
  2016 WL 3543699 (S.D. Cal. June 29, 2016)..........................................................................13

*Church v. Accretive Health Inc.*,
  2016 WL 3611543 (11th Cir. July 6, 2016) (per curiam)......................................................8, 9

*Dolan v. Select Portfolio Servicing*,
  2016 WL 4099109 (E.D.N.Y. Aug. 2, 2016)..........................................................................7, 9

*Dreher v. Experian Information Solutions, Inc.*,
  71 F. Supp. 3d 572, 577 (E.D. Va. 2014) ................................................................................10

*Duqum v. Scottrade, Inc.*,
  2016 WL 3683001 (E.D. Mo. July 12, 2016) ..........................................................................12

*Federal Election Commission v. Akins*,
  524 U.S. 11 (1998)..........................................................................................................6, 7, 8

*Friends of Animals v. Jewell*,
  --- F. 3d ----, 2016 WL 3854010 (D.C. Cir. July 15, 2016).....................................................8

*Frigard v. United States*,
  862 F.2d 201 (9th Cir. 1988) ...................................................................................................15

*Gubala v. Time Warner Cable, Inc.*,
  2016 WL 3390415 (E.D. Wis. June 17, 2016).....................................................................4, 13

*Hancock v. Urban Outfitters, Inc.*,
  --- F.3d ---, 2016 WL 3996710 (D.C. Cir. July 26, 2016) ..........................................1, 3, 4, 10

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)...................................................................................................................9

*Horton v. California*,
  496 U.S. 128 (1990)..................................................................................................................11

*Jamison v. Bank of America, N.A.*,
  2016 WL 3653456 (E.D. Cal. July 7, 2016) .........................................................................4, 8

*Khan v. Children's National Health Systems*,
  2016 WL 2946165 (D. Md. May 19, 2016) ......................................................................12, 13

*Manuel v. Wells Fargo Bank, N.A.*,
  123 F. Supp. 3d 810, 818 (E.D. Va. 2015) ..............................................................................10

*In re Nickelodeon Consumer Privacy Litigation*,
  --- F.3d ----, 2016 WL 3513782 (3d Cir. June 27, 2016).......................................................13

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Panzer v. Swiftships, LLC*,
  2015 WL 6442565 (E.D. La. Oct. 23, 2015) ..........................................................................10

*Public Citizen v. Department of Justice*,
  491 U.S. 440 (1989) .........................................................................................................6, 7, 8

*Sartin v. EKF Diagnostics, Inc.*,
  2016 WL 3598297 (E.D. La. July 5, 2016) .............................................................................5

*Smith v. Aitima Medical Equipment, Inc.*,
  No. 16-cv-339 (C.D. Cal. July 29, 2016) .................................................................................5

*Smith v. Ohio State University*,
  2016 WL 3182675 (S.D. Ohio June 8, 2016) .....................................................................4, 15

*Sobayo v. Public Storage*,
  2013 WL 3889987 (N.D. Cal. July 26, 2013) ........................................................................11

*Spokeo, Inc. v. Robins*,
  136 S. Ct 1540 (2016)...................................................................................................... *passim*

*Sprint Commucations Company v. APCC Services, Inc.*,
  554 U.S. 269 (2008) ...............................................................................................................11

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ...............................................................................................................15

*Thomas v. FTS USA, LLC*,
  2016 WL 3653878 (E.D. Va. June 30, 2016) ......................................................................3, 4

*Tourgeman v. Collins Financial Services, Inc.*,
  2016 WL 3919633 (S.D. Cal. June 16, 2016) ......................................................................5, 9

*United States v. Jacobsen*,
  466 U.S. 109 (1984) ...............................................................................................................11

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) .........................................................................................................11, 12

*In re Zappos.com, Inc.*,
  108 F. Supp. 3d 949 (D. Nev. 2015) ......................................................................................13

**Statutes**

28 U.S.C. § 1447(c) .......................................................................................................................15

# TABLE OF AUTHORITIES
### (continued)

**Page**

Fair Credit Reporting Act
    15 U.S.C. § 1681(a) ...................................................................................................2
    15 U.S.C. § 1681(b) ...................................................................................................2
    15 U.S.C. § 1681b(b)(2) ..........................................................................................14
    15 U.S.C. § 1681n(a)(1) ..........................................................................................14
    15 U.S.C. § 1681*o*(a) ..............................................................................................14

Real Estate Settlement Procedures Act
    12 U.S.C. § 2605(b) ..................................................................................................7
    12 U.S.C. § 2605(c) ..................................................................................................7

**Other Authorities**

Restatement (Second) of Torts § 652A (1977). ..............................................................12

Restatement (Second) of Torts § 652B (1977) .........................................................11, 12

John G. Roberts, Jr., *Article III Limits on Statutory Standing*,
    42 Duke L.J. 1219 (1993) ..........................................................................................6

Samuel D. Warren and Louis D. Brandeis, *The Right to Privacy*,
    4 Harv. L. Rev. 193 (1890) .....................................................................................12

In opposing Lyft's motion to dismiss, Nokchan doubles down on his argument that Article III's injury-in-fact requirement is satisfied by an alleged statutory violation alone. He does not deny that when he applied to be a driver on Lyft's platform, he filled out and signed a form advising him that a background report would be procured, and he authorized Lyft to procure that report. Nor does he identify any way in which he was affected—let alone harmed—by Lyft's purported failure to provide him with disclosures in the precise form mandated by statute. He does not allege, for example, that without the claimed regulatory violations, he would not have authorized Lyft to obtain a background report; that he would have not sought to apply to become a driver; or that he would have done anything differently at all. Rather, he continues to assert that it is enough to allege a violation of the procedural provisions of the Fair Credit Reporting Act ("FCRA") and similar California statutes—without more.

But that approach to standing is exactly what the Supreme Court rejected in *Spokeo*, expressly stating that "[a] violation of one of the FCRA's procedural requirements may result in no harm." 136 S. Ct. 1540, 1550 (2016). In such circumstances, a plaintiff cannot sue in federal court, because "Article III standing requires a concrete injury even in the context of a statutory violation," and a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants [him] a statutory right and purports to authorize [him] to sue to vindicate that right." *Id.* at 1549. Applying *Spokeo*, the D.C. Circuit recently underscored that "[t]he Supreme Court has been clear that the legislature 'cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing' under Article III." *Hancock v. Urban Outfitters, Inc.*, --- F.3d ---, 2016 WL 3996710, at *3 (D.C. Cir. July 26, 2016) (quoting *Spokeo*, 136 S. Ct. at 1547-58). "For that reason, a plaintiff cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549).

That is exactly what Nokchan has done here. Nokchan does not allege **any** effect on him—much less harm that is "real" and "not abstract" (*Spokeo*, 136 S. Ct. at 1548)—resulting from his exposure to the alleged violations of the FCRA and related California statutes. And as we explain below, his strained analogies between the violations alleged here and a cognizable

"informational injury" or "invasion of privacy" are unconvincing; they do not come close to meeting *Spokeo*'s test for when an alleged "intangible" injury constitutes "concrete" harm sufficient to satisfy Article III's injury-in-fact requirement.

Nokchan's complaint should be dismissed.

## I. *SPOKEO* HOLDS THAT NOKCHAN IS REQUIRED TO ALLEGE CONCRETE HARM BEYOND THE BARE VIOLATION OF ONE OF THE FCRA'S REQUIREMENTS.

Nokchan's arguments cannot be squared with *Spokeo*'s holding. Nokchan appears to believe that he does not need to allege ***how*** Lyft's purported violations of the FCRA's requirements could have resulted in harm to him.[1] Instead, he claims that the FCRA creates "informational or privacy ***rights***," and that violations of those statutory rights are enough to create standing. *E.g.*, Opp. 4-7 (emphasis added); *id.* at 12-13 ("The deprivation of information rights is a concrete injury and so is the invasion of statutorily protected privacy rights.").

As we explain in Part II, those assertions of harm fail on their own terms. But as a threshold matter, his emphasis on statutory rights rather than concrete harms rests on a deeply erroneous misreading of *Spokeo*. The Court held that a plaintiff must demonstrate "concrete ***injury***" resulting from a statutory violation that is "'real' and not 'abstract.'" *Id.* at 1548 (emphasis added). Nokchan's focus on the "right" rather than the "injury" is, therefore, a different question than the one the Supreme Court asked—and one that improperly casts aside *Spokeo*'s holding that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549.

For similar reasons, Nokchan cannot circumvent Article III's requirement of pleading concrete injury by pointing to Congress's overall goals in enacting the FCRA of "protect[ing] the 'consumer's right to privacy'" and promoting "'fair and accurate credit reporting'"—goals that Nokchan claims "[t]he FCRA furthers . . . through a set of interrelated requirements and prohibitions." Opp. 2-3 (quoting 15 U.S.C. § 1681(a)-(b)). This circular analysis ignores that whenever Congress enacts a regulatory requirement, its goal is to further a statutory purpose. In

---

[1] Nokchan appears to recognize that his standing to pursue his state statutory claims rises or falls with his standing to pursue his FCRA claims. *See* Opp. 13-14.

nearly every case, therefore, a regulatory violation, at least to some degree, hinders full accomplishment of the statute's objectives. Yet the Supreme Court in *Spokeo* expressly rejected the categorical approach that Nokchan urges here: "Congress' role in identifying and evaluating intangible harms ***does not mean*** that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." 136 S. Ct. at 1549 (emphasis added).

Specifically, the Supreme Court cautioned in *Spokeo* that some statutory violations could "result in no harm," even if they involve alleged conduct that violates the law ***and*** Congress' purpose in enacting that law. 136 S. Ct. at 1550. Likewise, the D.C. Circuit explained that, under *Spokeo*, "some statutory violations could 'result in no harm,' even if they involved producing information in a way that violated the law." *Hancock*, 2016 WL 3996710, at *3. As the *Spokeo* Court explained, that analysis directly applies to the FCRA. The Court pointed out that, in enacting FCRA, "Congress plainly sought to curb the dissemination of false information," yet for purposes of Article III standing, "not all inaccuracies cause harm or present any material risk of harm." 136 S. Ct. at 1550. For "example," the Court explained, "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.*; *accord Hancock*, 2016 WL 3996710 at *2 (explaining that mere request for and collection of a zip code from a retail customer did not impose any injury and thus was "only a bare violation of the requirements of D.C. law").

Nokchan fares no better in suggesting that the Supreme Court in *Spokeo* limited its holding to the violation of ***procedural*** rights created by a statute. *See* Opp. 12-13. Instead, *Spokeo* pointed to bare procedural violations as "an example" of different reasons why a plaintiff may lack standing. 136 S. Ct. at 1549-50. Whether or not a statutory right is classified as substantive or procedural, to have standing, a plaintiff must have suffered an injury that is "real." *Spokeo*, 136 S. Ct. at 1549.[2]

---

[2] For these reasons, Nokchan's reliance on *Thomas v. FTS USA, LLC*, 2016 WL 3653878 (E.D. Va. June 30, 2016), is misplaced. *See* Opp. 13. The court in *Thomas*, like Nokchan here, improperly conflated the question of whether the plaintiff suffered concrete harm with the question of whether Congress created "substantive rights" (as opposed to "procedural" or

Put another way, for Congress to elevate an intangible injury to the status of concrete harm, that injury must already "be '*de facto*'; that is, it must actually exist" and be "real," not "abstract." *Spokeo*, 136 S. Ct. at 1548. As the D.C. Circuit recently put it, "an asserted injury to even a statutorily conferred right 'must actually exist,' and must have 'affect[ed] the plaintiff in a personal and individual way.'" *Hancock*, 2016 WL 3996710, at *3 (quoting *Spokeo*, 136 S. Ct. at 1543, 1548).

Numerous courts have accordingly recognized *Spokeo*'s "clear directive" that a plaintiff "allege a concrete harm" even "in cases in which a plaintiff has a statutory right." *Gubala v. Time Warner Cable, Inc.*, 2016 WL 3390415, at *4, *6 (E.D. Wis. June 17, 2016). As the D.C. Circuit held in *Hancock*, for example, the plaintiff's "naked assertion that a zip code was requested and recorded ***without any concrete consequence***" failed to establish injury in fact. 2016 WL 3996710, at *3 (emphasis added). *Hancock* relied on the same reasoning that led to the outcome in *Smith v. Ohio State University*, 2016 WL 3182675 (S.D. Ohio June 8, 2016), in which the court explained that the bare failure to provide a disclosure in the precise format required by the FCRA does not amount to an injury in fact under *Spokeo* in the absence of any "concrete consequential damage." *Id.* at *3; *see also* Mot. 6-7 (discussing *Smith*).

A number of courts in this Circuit have reached substantially similar conclusions in the context of other alleged statutory violations. For instance, in *Jamison v. Bank of America, N.A.*, 2016 WL 3653456 (E.D. Cal. July 7, 2016), the court held that a plaintiff lacked standing to sue a bank under the Truth in Lending Act for its alleged failure to disclose insurance proceeds in its mortgage payoff statements. *Id.* at *3-5. The court explained that the plaintiff could not show an injury in fact because the complaint did "not provide factual allegations establishing any harm plaintiff suffered as a result of defendant's actions," and "a procedural violation of the TILA's requirements for payoff statements does not inherently establish concrete harm." *Id.* at *4.

---

"technical" rights). *Thomas*, 2016 WL 3653878, at *7, 10-11. In addition, we respectfully submit that the court's discussion of informational injury and privacy rights, which is similar to Nokchan's arguments, was incorrect for all of the reasons we discuss in Part II, *infra*.

4

1    More recently, another court held that a plaintiff lacked standing to sue under the Telephone Consumer Protection Act, because "a bare statutory violation is not enough" and the plaintiff's generic assertions of "tangible and intangible harms," including "invasion of privacy," were not supported by any specific allegations in the complaint. *Smith v. Aitima Med. Equip., Inc.*, No. 16-cv-339, Dkt. No. 43, at 4-6 (C.D. Cal. July 29, 2016) (attached as Exhibit A); *see also, e.g.*, *Sartin v. EKF Diagnostics, Inc.*, 2016 WL 3598297, at *3 (E.D. La. July 5, 2016) (holding that the recipient of a junk fax lacked standing under the TCPA because "he fail[ed] to plead facts demonstrating how this statutory violation caused him concrete harm" or "what specific injury, if any, [he] sustained through defendants' alleged statutory violations").

Likewise, in *Tourgeman v. Collins Financial Services, Inc.*, 2016 WL 3919633 (S.D. Cal. June 16, 2016), the court held that the plaintiff had not suffered any concrete injury arising from the allegation that a company mailed a letter to her containing inaccurate information in violation of the Fair Debt Collection Practices Act. *Id.* at *1-2. The court held that "*Spokeo* confirms that merely asserting a statutory violation that results in no actual injury is not sufficient to confer Article III standing." *Id.* at *2. Instead, "[i]n order to have Article III standing, as the Supreme Court's decision in *Spokeo* clarified, Tourgeman needs to do more than just point to a statutory violation, he needs to show an actual injury." *Id.* The plaintiff flunked Article III's "requirement that he demonstrate he had concrete harm *resulting from* the violation" because he never received the letter at issue and therefore did not become aware of it until after the litigation had begun. *Id.* (emphasis added)

As these cases demonstrate, alleging the bare violation of a statutory right—which is all that Nokchan does here—ordinarily does not suffice to allege the concrete harm that Article III demands. And as we next explain, the particular statutory violations that Nokchan alleges do not support his claim of inherent "intangible" injury either.

**II.   NOKCHAN HAS FAILED TO ALLEGE CONCRETE "INTANGIBLE" HARM.**

Nokchan does not attempt to show that he suffered tangible harm from the alleged statutory violations at issue. Instead, he argues that any violation of those statutory provisions

5

inherently and automatically amounts to at least one of two intangible harms: (1) informational injury (Opp. 8-9, 11-13); and (2) invasion of privacy (*id.* at 9-11).  He is wrong on both counts.

### A.   Nokchan's Analogy To Informational Injury Fails.

Nokchan's first effort to show concrete harm for the alleged violation of the FCRA and related California statues principally rests on a flawed attempt to equate his statutory claims here with the statutory violations at issue in *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), and *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989).  But the alleged harms are different in kind.

Specifically, the violations Nokchan alleges here involve obligations to provide notice of a summary of rights under the FCRA, or to provide a disclosure that a credit report will be procured in a stand-alone document.  *See* Mot. 2-3, 7-8.  By contrast, *Akins* and *Public Citizen* involved a requirement that the government provide specific information *that had been requested by the plaintiff*.  *Akins* "confirm[ed] that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III." 136 S. Ct. at 1549 (discussing *Akins*). *Public Citizen* held "that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act 'constitutes a sufficiently distinct injury to provide standing to sue.'" *Id.* at 1549-50 (discussing *Public Citizen*).

In each case, the plaintiffs alleged that they had requested that the government provide them with information to which they had a right, but that the government had not done so—the concrete injury was the government's failure to provide *information requested* by the plaintiff. As future Chief Justice Roberts observed, "[a]nother individual who has not made a disclosure request, and therefore has not suffered a wrongful denial, has not been injured and does not have standing to sue, even if he would like to have access to the same documents." John G. Roberts, Jr., *Article III Limits on Statutory Standing*, 42 Duke L.J. 1219, 1228 n.60 (1993).

Not only did the plaintiff groups in *Akins* and *Public Citizen* suffer the wrongful denial of their requests for information to which they were entitled by law, but the deprivation of that

information impaired their ability to participate in the democratic process.  The *Akins* Court stated that "the information would help [plaintiffs] (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election."  524 U.S. at 21.  And in *Public Citizen* the deprivation was of information the interest groups needed to scrutinize the "workings" of government in order to "participate more effectively in the judicial selection process."  491 U.S. at 449.

Lyft's alleged failure to provide the precise statutory disclosures bears no resemblance to the government's failure to perform a ***requested*** mandatory duty—something for which the longstanding mandamus remedy provides a historical analogue.  It also does not imperil Nokchan's ability to participate in the democratic process or lead directly to any other obvious negative effect on him—on the contrary, he does not allege anything beyond the statutory violations themselves.

In fact, another federal court has just held that *Spokeo* requires rejection of the same sweeping argument that Nokchan raises here—"that the mere violation of a statute that requires disclosure of any type of public or consumer information is sufficient to confer standing on a plaintiff who was denied access to that information."  *Dolan v. Select Portfolio Servicing*, 2016 WL 4099109, at *6 & n.7 (E.D.N.Y. Aug. 2, 2016).  The *Dolan* court held that allegations of bare violations of Sections 2605(b) and (c) of the Real Estate Settlement Procedures Act ("RESPA") could not suffice to establish standing "without some allegation of actual harm."  *Id.* at *4-7.  Those provisions of RESPA require loan servicers to provide borrowers with letters that include specific information when a loan is transferred.  As the court recognized, the argument that any alleged failure to comply with those statutory disclosure requirements "plainly ignores the Supreme Court's reiteration in *Spokeo* . . . that a plaintiff cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'"  *Id.* at *6 n.7 (quoting *Spokeo*, 136 S. Ct. at 1549).

1    With respect to Nokchan's causes of action about Lyft's alleged failure to provide stand-alone disclosures (*see* Mot. 7-8), those claims fail to allege a cognizable informational injury for the additional, common-sense reason that Nokchan does not deny receiving the information contained in the disclosure—that a background report would be obtained. *See* Compl. ¶¶ 27, 51, 66. Rather, he challenges only the ***format*** in which that information was provided to him, but identifies no consequence whatsoever from Lyft's purported failure to follow the statutory procedures. As the court noted in *Jamison*, unlike in *Public Citizen* and *Akins*, in which the plaintiffs were entirely unable "to obtain information subject to disclosure," the alleged violation of the TILA's procedures governing the format of mortgage payoff statements "does not inherently establish concrete harm"; for example, the violation "may result in no concrete harm if the lender provides the omitted information through other means." *Jamison*, 2016 WL 3653456, at *4. The same reasoning applies here with equal force.

In addition, the D.C. Circuit's recent opinion in *Friends of Animals v. Jewell*, --- F. 3d ----, 2016 WL 3854010 (D.C. Cir. July 15, 2016), confirms that alleging a bare deprivation of information that a statute requires to be disclosed, as Nokchan does here, does ***not*** suffice to establish a cognizable informational injury. Rather, to show an injury in fact, the plaintiff must also show that "nondisclosure has caused it to suffer the kind of harm from which Congress, in mandating disclosure, sought to protect individuals or organizations like it." *Id.* at *3. Nokchan has not even attempted to make such a showing here; he does not allege ***any effect on him at all*** from not receiving a model summary of rights or the background report disclosure in a stand-alone document.

Nokchan instead cites an unpublished decision from the Eleventh Circuit concluding that a debt collector's alleged failure to make certain disclosures to a debtor in violation of the Fair Debt Collection Practices Act amounted to an informational injury. Opp. 6 (citing *Church v. Accretive Health Inc.*, 2016 WL 3611543, at *1-3 (11th Cir. July 6, 2016) (per curiam)). *Church* is unpersuasive, however, for several reasons. To begin with, the court based its holding on the same false dichotomy between procedural and substantive rights discussed in Part I above. *See*

*Church*, 2016 WL 3611543, at *3 & n.3. Moreover, *Church* relied heavily on a surface treatment of the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982), in which the Supreme Court held that an African-American "tester-plaintiff" had standing to sue the defendant for making discriminatory false representations to her about the unavailability of apartments in violation of the Fair Housing Act. *Church*, 2016 WL 3611543, at *3. But the *Havens* plaintiff undoubtedly suffered concrete intangible harm in the form of discrimination, even though she did not intend to rent an apartment, and that discrimination was a real injury that Congress "identif[ied] and elevat[ed]" (*Spokeo*, 136 S. Ct. at 1549) in the Fair Housing Act to a legally cognizable injury in fact. By contrast, the court in *Church*, like Nokchan here, identified no underlying injury protected by the statutory right—rather, it conflated the violation of the statutory right itself with concrete injury. *See Church*, 2016 WL 3611543, at *3 ("[T]hrough the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures."). That tautological approach to Article III standing cannot be squared with *Spokeo*'s holding that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." 136 S. Ct. at 1549. Indeed, another federal court in California reached the opposite conclusion from *Church*, explaining that *Spokeo* requires a plaintiff asserting a violation of the FDCPA to demonstrate "concrete harm resulting from the violation," not just "[t]he bare allegation of a statutory violation." *Tourgeman*, 2016 WL 3919633, at *2. And a federal judge in the Eastern District of New York likewise expressly "disagreed" with *Church*; "reject[ing] the view that *Spokeo* established the proposition that *every* statutory violation of an 'informational' right 'automatically' gives rise to standing." *Dolan*, 2016 WL 4099109, at *6 n.7.

Nokchan also relies on a handful of ***pre***-*Spokeo* decisions which had purportedly recognized informational injury in the FCRA context (Opp. 8-9, 11-12). But each of those decisions rests on reasoning that is no longer tenable after *Spokeo*. Specifically, all of those

decisions hold that Article III standing is satisfied because "Congress created a legal right under the [FCRA], the violation of which constitute[s] an injury sufficient for constitutional standing purposes." *Dreher v. Experian Info. Solutions, Inc.*, 71 F. Supp. 3d 572, 577 (E.D. Va. 2014); *accord Manuel v. Wells Fargo Bank, N.A.*, 123 F. Supp. 3d 810, 818 (E.D. Va. 2015) (quoting same); *Panzer v. Swiftships, LLC*, 2015 WL 6442565, at *6 (E.D. La. Oct. 23, 2015) (citing *Manuel*).

But as we have discussed above (at 2-6), that is the very proposition that the Supreme Court rejected in *Spokeo*. As the D.C. Circuit recently pointed out as well in construing *Spokeo*, that approach to standing "vastly overread[s]" prior Supreme Court precedent. *Hancock*, 2016 WL 3996710, at *3. What is more, both *Panzer*, 2015 WL 6442565, at *6, and *Dreher*, 71 F. Supp. 3d at 577, expressly followed the ***Ninth Circuit's*** flawed approach to standing in *Spokeo* itself, which of course was subsequently vacated by the Supreme Court. Accordingly, Nokchan's repeated assertion that "nothing in *Spokeo* casts doubt on these cases" (Opp. 8; *see also id.* at 12) is little more than wishful thinking.

### B. Nokchan's "Invasion Of Privacy" Argument Does Not Satisfy *Spokeo*'s Test For Identifying Concrete "Intangible" Injuries.

Nokchan's remaining attempt to show concrete intangible harm is his argument that Lyft's alleged failure to disclose that a background check would be procured in the format of a stand-alone document violated Nokchan's privacy rights. Opp. 9-11. At the outset, this argument fails because Nokchan does not—and cannot—articulate any coherent theory for how his privacy was violated by the allegedly improper ***formatting*** of the disclosure document. Nor does he deny that he (1) received and signed that document and (2) authorized Lyft to procure a background report. Instead, he now appears to suggest that (despite his consent to a background report) his privacy was invaded because a consequence of the background report is "obtaining information contained in third party databases." *Id.* at 11.

This asserted "invasion of privacy" does not amount to a concrete harm. As we explained in our opening brief (at 5), the Supreme Court in *Spokeo* set forth a two-prong test to

determine whether an alleged intangible harm is sufficiently concrete: (1) does the alleged harm have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"; and (2) has Congress "identif[ied] [the] intangible harm" as one "that meet[s] minimum Article III requirements." *Spokeo*, 136 S. Ct. at 1549. Here, neither factor supports Nokchan's theory that any violation of FCRA's stand-alone disclosure requirement automatically confers standing.

Nokchan's attempt to justify his claim to standing on historical grounds is half-hearted at best. He bizarrely suggests that a failure to provide a stand-alone disclosure involves a privacy harm "akin" to the failure to follow the Fourth Amendment's requirement that a warrant "'particularly describ[e] the place to be searched.'" Opp. 10. But that analogy is unsupported by common sense or case law.[3] Among other things, the Fourth Amendment is completely inapplicable to private parties like Lyft, because it applies solely to governmental conduct. *See, e.g.*, *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *Sobayo v. Pub. Storage*, 2013 WL 3889987, at *2 (N.D. Cal. July 26, 2013).

Nokchan also argues that "American law has long recognized the importance of privacy," pointing to the common-law tort of intrusion upon seclusion. Opp. 10 (citing Restatement (Second) of Torts § 652B (1977)). This argument is misguided in several respects. First, he appears to have misconstrued *Spokeo*'s reference to the importance of "historical practice." *Spokeo*, 136 S. Ct. at 1549. In discussing historical practice, the Court cited *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 774-77 (2000), which examined "the long tradition of *qui tam* actions in England and the American Colonies," including "in the period *immediately before and after the framing of the Constitution*" (emphasis added). *See also id.* at 774 ("[T]he Constitution established that 'judicial power could come into play only in matters that were the traditional concern of the courts at Westminster . . . .'") (alterations omitted); *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 274-75 (2008) ("[I]n crafting Article III, the framers gave merely the outlines of what were to them the familiar

---

[3] Nokchan also fails to mention that his sole citation—to *Horton v. California*, 496 U.S. 128 (1990), which has nothing to do with the FCRA—is actually a cite to the ***dissenting opinion***.

11

operations of the English judicial system and its manifestations on this side of the ocean before the Union.") (alterations and quotation marks omitted). These precedents underscore that the reference to "historical practice" in *Spokeo* refers to the types of harms that would have been recognized *at the time of the founding* as forming the basis of a lawsuit.

In contrast to the *qui tam* actions at issue in *Vermont Agency*, a claim based on privacy concerns would have been unrecognizable to the Framers of the Constitution, because "[p]rior to 1890 no English or American court had ever expressly recognized the existence of the right [to privacy]." Restatement (Second) of Torts § 652A cmt. a (1977). Rather, common-law privacy claims have their origins in a law review article published in 1890—over a century after the founding. *See id.* (citing Samuel D. Warren and Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890)).

But in all events, Nokchan's allegations bear no resemblance to the tort of an unreasonable intrusion upon the seclusion of another. As discussed above, his argument conflates the procurement of a background report about him—a fact that was disclosed to Nokchan in advance and expressly authorized by him—with the ***formatting*** of the disclosure provided to him. Needless to say, variations in the design and layout of a document in no way "intrude[], physically or otherwise, upon the solitude or seclusion of another or his private affairs"—much less in a manner that "would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B.

Modern precedents confirm that privacy concerns of the kind Nokchan alleges here fall far short of satisfying Article III standing. For the reasons we have discussed above (*see* Part I, *supra*), recent decisions have reiterated that generalized assertions of "loss of privacy . . . are too abstract to establish Article III standing"; rather, a plaintiff must show resulting "damages or injury due to a loss of privacy." *Duqum v. Scottrade, Inc.*, 2016 WL 3683001, at *8 (E.D. Mo. July 12, 2016) (collecting cases); *accord, e.g.*, *Khan v. Children's Nat'l Health Sys.*, 2016 WL 2946165, at *6 (D. Md. May 19, 2016) (rejecting argument that data breach in violation of state statutes and common law "caused a loss of privacy that constitutes an injury in fact," because the

1  plaintiff "has not identified any potential damages arising from such a loss and thus fails to
2  allege a 'concrete and particularized injury.'") (quoting *In re Zappos.com, Inc.*, 108 F. Supp. 3d
3  949, 962 n.5 (D. Nev. 2015)). Nokchan's reflexive invocation of the term "privacy" thus does
4  not substitute for Article III's requirement that he allege a "real" concrete harm from the alleged
5  statutory violations.

6  Moreover, Nokchan's opposition ignores our discussion of decisions like *Gubala* and
7  *Khan*, which have applied *Spokeo* to reject similarly conclusory assertions of "invasions of
8  privacy." *See* Mot. 8-9. And the decisions on which Nokchan does rely do not support his
9  position on standing.

10  For starters, in *In re Nickelodeon Consumer Privacy Litigation*, --- F.3d ----, 2016 WL
11  3513782 (3d Cir. June 27, 2016), the court held that the defendant's unauthorized collection of
12  the private personal information of children under the age of 13 constituted a sufficiently
13  concrete intangible harm to the minors' privacy. *Id.* at *7-8. We respectfully submit that the
14  Third Circuit's decision cannot be squared with *Spokeo* because it failed to apply the proper test
15  for assessing whether Congress could elevate an intangible injury to the status of a concrete
16  harm. But in all events, the decision has no bearing on the circumstances here, in which there
17  has been no surreptitious collection of Nokchan's private information at all. Rather, Nokchan
18  does not dispute that Lyft disclosed to him that it would be procuring a background report and
19  that he authorized Lyft to procure the background report. *See* Mot. 2, 7.

20  The decision in *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699
21  (S.D. Cal. June 29, 2016), only reinforces this distinction and further undermines Nokchan's
22  position. That case involved an alleged violation of the California Invasion of Privacy Act,
23  which "prohibits unauthorized electronic eavesdropping on confidential conversations." *Id.* at
24  *8. The court ***contrasted*** the allegations before it, in which one party "secretly recorded [the
25  other party's] employees to obtain confidential and privileged [information] to use against [the
26  other party]," with "technical violation[s] of the Fair Credit Reporting Act," which the court
27  recognized "'may result in no harm.'" *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549).

28

13

Finally, Nokchan fares no better in arguing that his claim to standing is supported by a congressional judgment. *See* Opp. 2-3, 9. He relies first on Congress' general findings about protecting a "consumer's right to privacy" and "ensur[ing] fair and accurate credit reporting" (*id.* at 2), but as discussed above, he fails to connect those findings to any concrete harm that he suffered as a result of the particular violations alleged here. Again, *Spokeo* makes clear that Congress' broad purpose in enacting a statute—such as "curb[ing] the dissemination of false information"—cannot be equated with a congressional determination that *every* claimed violation of the statute "works [a] concrete harm." *Spokeo*, 136 S. Ct. at 1550. Nor can the creation of a private right of action be enough: a plaintiff does not "automatically satisf[y] the injury-in-fact requirement" simply because a legislature created "a statutory right and purport[ed] to authorize [a] person to sue to vindicate that right." *Id.* at 1549.

Nokchan also relies on scattered comments from the legislative history of the 1996 amendments to the FCRA, which added the disclosure and authorization prerequisites codified at 15 U.S.C. § 1681b(b)(2). But Nokchan again misses the mark; even assuming that the Senate Report on which he relies is an authoritative statement of congressional intent, the apparent concern that employers "*may* create an improper invasion of privacy" by procuring background reports was plainly referring to their doing so *without any* disclosure and authorization at all, which is what the previous statutory scheme allowed. Opp. 3, 9 (quoting S. Rep. No. 104-185, at 35 (1995)) (emphasis added).

Simply put, Nokchan cannot point to a congressional judgment that any and every failure to provide a disclosure in a stand-alone document should permit an action in court in the absence of conventional injury in fact. No such judgment exists. Instead, Congress created a private cause of action for *every* violation of the FCRA (*see* 15 U.S.C. § 1681*o*(a)); and it subsequently authorized statutory damages for *every* willful violation (*see id.* § 1681n(a)(1)). There is no evidence that Congress singled out the stand-alone disclosure provisions of FCRA and made a

"judgment" (*Spokeo*, 136 S. Ct. at 1549) that such violations should be actionable even when not accompanied by any "real" injury or concrete consequence.[4]

### C. Nokchan's Complaint Should Be Dismissed Without Prejudice.

Finally, Nokchan asserts that "[i]f [he] lacks Article III standing, the result is remand of the FCRA action, not dismissal." Opp. 14. But that request for a remand makes no sense: Remand is an appropriate remedy only when a court lacks subject-matter jurisdiction over an action ***removed*** from state court, such as *Smith*. *See* 28 U.S.C. § 1447(c). Because Nokchan initially filed this action in federal court, it must instead be dismissed.[5]

## III. CONCLUSION

Nokchan's complaint against Lyft should be dismissed for lack of subject matter jurisdiction.

Dated: August 5, 2016

MAYER BROWN LLP
JOHN P. ZAIMES
ARCHIS A. PARASHARAMI
RUTH ZADIKANY

By: */s/ John P. Zaimes*
      John P. Zaimes

Attorneys for Defendant
LYFT, INC.

---

[4] Even if Nokchan could show that Congress had made such a determination—and he cannot—*Spokeo* makes clear that any such judgment is "instructive" rather than dispositive. 136 S. Ct. at 1549. Congress could not transform by fiat conduct that "works [no] concrete harm" (*id.* at 1550) into a "concrete" harm. That would transgress the "hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).

[5] We agree with Nokchan's alternative proposal (Opp. 14) that any dismissal should be without prejudice, because "[o]rdinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice." *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988).