1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6

7    MICHAEL NOKCHAN,                          Case No.  15-cv-03008-JCS
              Plaintiff,
8
9         v.                                   **ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND DISMISSING CASE WITHOUT PREJUDICE**
10   LYFT, INC.,
              Defendant.
11
                                               Re: Dkt. No. 31
12

13   **I.      INTRODUCTION**

14          Plaintiff Michael Nokchan brings this putative class action under the Fair Credit Reporting

15   Act ("FCRA") and California state law against Defendant Lyft, Inc. ("Lyft").   Lyft brings a

16   Motion to Dismiss For Lack of Subject Matter Jurisdiction ("Motion")  under Rule 12(b)(1) of the

17   Federal Rules of Civil Procedure, asserting that Nokchan lacks standing under Article III of the

18   U.S. Constitution, citing the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540

19   (2016) ("*Spokeo*").  For the reasons stated below, the Motion is GRANTED.[1]

20   **II.     BACKGROUND**

21          **A.     The Complaint**

22          Nokchan alleges that he was employed by Lyft as an hourly, non-exempt employee

23   working in the State of California.[2]  Complaint ¶ 5.  According to Nokchan, when he applied for

24   employment with Lyft, he was required to "fill out and sign a document requiring background

25

26   ───────────────────
     [1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28
27   U.S.C. § 636(c).
     [2] Lyft contends its relationship with Nokchan is not, in fact, an employer-employee relationship
28   but acknowledges that this dispute is not relevant to the question of whether the Court has subject
     matter jurisdiction over Plaintiffs' claims.

United States District Court
Northern District of California

United States District Court
Northern District of California

check." *Id.* ¶ 27.  He alleges that the disclosures required under the FCRA were embedded in the document, which contained "extraneous information," and therefore, that Lyft failed to comply with the FCRA and other State laws.  *Id.*  ¶ 28.  He further alleges that Lyft failed to inform him at the time of the disclosures that he had a right to request a summary of his rights under the FCRA. *Id.* ¶ 34.  Nokchan alleges that Lyft procured his credit and background reports based on these inadequate disclosures and that in doing so, it injured him by violating his privacy and statutory rights under the FCRA and state law.  *Id.* ¶¶ 36, 56, 70.  Nokchan alleges that the putative class members were similarly injured.  *Id.*

Nokchan asserts four claims in his Complaint:  1) violation of Section 1681b(b)(2) of the FCRA based on alleged failure to provide clear and unambiguous disclosures in a stand-alone document (Claim One);  2) violation of Sections 1681d(a)(1) and 1681g(c) of the FCRA based on alleged failure to provide a proper summary of rights notice (Claim Two);  3) violation of Section 1786.16(a)(2)(B) of California's Investigative Consumer Reporting Agencies Act ("ICRAA") based on failure to provide clear and unambiguous disclosures in a stand-alone document (Claim Three); and 4) violation of section 1785.20.5(a) of California's Consumer Credit Reporting Agencies Act ("CRAA") based on the allegation that the authorization form failed to "identify the source of any credit report" and "the specific basis" for use of that report (Claim Four).

### B.   The Motion

In the Motion, Lyft contends Plaintiff has alleged only bare statutory violations and no injury in fact and therefore, under *Spokeo*, that he lacks standing under Article III of the U.S. Constitution to proceed on his claims in federal court.  Motion at 6.  To demonstrate injury in fact, Lyft asserts, Nokchan must allege facts showing that his injury was not only particularized but also "concrete and real, and not abstract."  *Id.*  According to Lyft, Nokchan has failed to meet this requirement as to all of his claims.  *Id.* at 7.

First, as to Claims One and Three, Lyft argues that Nokchan has failed to demonstrate any concrete harm that resulted from its alleged failure to provide disclosures in a stand-alone document, pointing to the fact that the allegations in the complaint make clear that Nokchan authorized Lyft to conduct a background check by signing the required form.  *Id.*  In support of its

2

1   position, Lyft cites to *Smith v. Ohio State Univ.*, 2016 WL 3182675, at *1 (S.D. Ohio June 8,

2   2016), a post-*Spokeo* case that Lyft contends is closely on point.

3        Second, with respect Lyft's failure to provide Nokchan with a summary of rights (Claim

4   Two), Lyft contends Nokchan fails to allege that this alleged violation "affected him in *any* way,

5   much less caused him concrete harm." *Id.* at 8 (emphasis in original).

6        Third, with respect to Lyft's alleged failure to comply with California's CCRAA by giving

7   him notice of the source of and use for any credit report obtained by Lyft (Claim Four), Lyft

8   contends that Nokchan has similarly failed to allege any concrete injury that resulted from this

9   alleged violation. *Id.* at 8.

10       Lyft argues further that to the extent that Nokchan attempts to establish an injury in fact by

11  referring to his "privacy," that attempt fails because "this vague incantation is just a restatement of

12  his statutory claims." *Id.* According to Lyft, the court in *Smith* expressly rejected a similar

13  attempt to establish standing based on alleged violation of the plaintiff's privacy rights, as have

14  other courts as well. *Id.* at 8-9 (citing *Smith v. Ohio State Univ.*, 2016 WL 3182675, at *4 ;

15  *Gubala v. Time Warner Cable, Inc.*, 2016 WL 3390415, at *1, *4 (E.D. Wis. June 17, 2016); *Khan*

16  *v. Children's Nat'l Health Sys.*, 2016 WL 2946165, at *1, 6 (D. Md. May 19, 2016)).

17  III.    **ANALYSIS**

18       A.    **Legal Standard under Rule 12(b)(1)**

19       Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject

20  matter jurisdiction.  Under Article III of the U.S. Constitution, the Court has subject matter

21  jurisdiction only if the party bringing the action has standing, an inquiry which addresses whether

22  the plaintiff is the proper party to bring the matter to the court for adjudication. *Chandler v. State*

23  *Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citing Erwin Chemerinsky,

24  Federal Jurisdiction § 2.3.1, at 57 (5th ed.2007)). When a defendant moves to dismiss under Rule

25  12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff, as the party seeking to invoke the

26  court's jurisdiction by filing the complaint, bears the burden of establishing subject matter

27  jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  A

28  defendant may attack the court's jurisdiction as it appears on the face of the complaint or by

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1   presenting affidavits and other evidence.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

2   For a facial attack, the court must "accept all allegations in the complaint as true and construe

3   them in the light most favorable to the plaintiff[]."  *Id.*

### B.   Legal Standards Governing Article III Standing

5        "[T]he  irreducible constitutional minimum of [Article III] standing" contains three

6   elements, namely, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly

7   traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

8   favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v.*

9   *Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  The dispute here relates to the "injury in fact"

10  requirement, which the Court has described as the "'[f]irst and foremost' of standing's three

11  elements."  *Id.* (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)).

12   "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally

13  protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

14  hypothetical.'"  *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

15       In *Spokeo*, the Court emphasized that concreteness and particularization are separate

16  requirements.  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and

17  individual way.'"  *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560 n. 1).  Even where this requirement

18  is met, however, the injury-in-fact requirement will not be satisfied unless the injury is also

19  concrete.  *Id.*  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Id.* (citing

20  Black's Law Dictionary 479 (9th ed. 2009).   An injury may be "concrete" even if it is intangible,

21  the *Spokeo* Court explained, and "in determining whether an intangible harm constitutes injury in

22  fact, both history and the judgment of Congress play important roles."  *Id.* at 1549.   With respect

23  to history,  the Court said, "it is instructive to consider whether an alleged intangible harm has a

24  close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit

25  in English or American courts."  *Id.* (citing *Vermont Agency of Natural Resources v. United States*

26  *ex rel. Stevens*, 529 U.S. 765, 775-777 (2000)).  The judgment of Congress is also "instructive and

27  important" because "Congress is well positioned to identify intangible harms that meet minimum

28  Article III requirements."  *Id.*  Thus, "Congress has the power to define injuries and articulate

1    chains of causation that will give rise to a case or controversy where none existed before." *Id*.

2    (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)).

3         Nonetheless, "Congress' role in identifying and elevating intangible harms does not mean

4    that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a

5    person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at

6    1549.   Thus, while a procedural violation "can be sufficient in some circumstances to constitute

7    injury in fact," for example, where there is a "risk of real harm," a "*bare* procedural violation,

8    divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III."

9    *Id*.  (emphasis added).

10        The Court in *Spokeo* addressed the injury-in-fact requirement in the context of an alleged

11   FCRA statutory violation.   The plaintiff, Robins, alleged that Spokeo, a "people search engine,"

12   had violated Section 1681 of the FCRA by providing inaccurate information about him in a

13   generated credit report.  *Id*. at 1544.  The Ninth Circuit held that Robins had adequately alleged an

14   injury in fact because he had alleged a "particularized" injury, namely, violation of his statutory

15   rights under the FCRA, but the Court found that the Ninth Circuit's analysis was incomplete

16   because it had failed to consider whether that injury satisfied the "concreteness" requirement.  *Id*.

17   at 1545, 1548.   The Court remanded the case for consideration of whether Robins had met that

18   requirement, taking "no position as to whether the Ninth Circuit's ultimate conclusion—that

19   Robins adequately alleged an injury in fact—was correct." *Id*. at 1550.  While the Court did not

20   reach the question of whether the plaintiff's allegations were sufficient to demonstrate a concrete

21   injury, it offered examples of FCRA violations that likely would *not* satisfy the concreteness

22   requirement, opining as follows:

23            On the one hand, Congress plainly sought to curb the dissemination
             of false information by adopting procedures designed to decrease
24            that risk. On the other hand, Robins cannot satisfy the demands of
             Article III by alleging a bare procedural violation.  A violation of
25            one of the FCRA's procedural requirements may result in no harm.
             For example, even if a consumer reporting agency fails to provide
26            the required notice to a user of the agency's consumer information,
             that information regardless may be entirely accurate.  In addition,
27            not all inaccuracies cause harm or present any material risk of harm.
             An example that comes readily to mind is an incorrect zip code. It is
28            difficult to imagine how the dissemination of an incorrect zip code,

United States District Court
Northern District of California

1    without more, could work any concrete harm.

2    *Id*. at 1550.[3]

3    ### C.   Discussion

4        Under *Spokeo*, a plaintiff who seeks to assert a claim under the FCRA is required to allege

5    facts showing a concrete injury.  While procedural violations that have resulted in real harm  – or

6    even a risk of real harm  – may be sufficient to meet this requirement, Plaintiff in this case has

7    alleged no such injury.   He has not alleged that he suffered any real harm as a result of the fact

8    that he did not receive required disclosures in a separate document or that he did not receive a

9    summary of his rights under the FCRA.  In particular, he does not alleged that as a result of Lyft's

10   failure to provide the disclosures in a separate document or to notify him of his right to receive a

11   summary of his legal rights he was confused about his rights or that he would not have consented

12   to the background checks had he understood his rights.[4]  Nor does he allege that he was harmed by

13   the background check in any way.  Rather, based on the allegations in the complaint, Nokchan was

14   hired by Lyft after he successfully completed its background investigation and he continues to

15   work for Lyft.  Under these circumstances, the Court can find no real harm, or a threat of such

16   harm, that gives Nokchan standing under Article III to pursue his claims in federal court.  Rather,

17   the facts alleged in this case appear to be similar to the example offered in *Spokeo*, where the

18   Court opined that failure to provide the required notice to users of the consumer information

19   provided would not be sufficient to meet Article III's injury-in-fact requirement.

20       The Court's conclusion is consistent with at least two other recent district court decisions.

21   First, in *Smith v. The Ohio State University*, the court found that the plaintiff lacked Article III

22   standing where the plaintiff, like Nokchan, alleged that the document that she signed giving

---

[3] In her dissent, Justice Ginsburg, joined by Justice Sotomayor, agreed with the general principals articulated by the majority but found "no utility in returning [the] case to the Ninth Circuit" because she believed Robins' allegations "carr[ied] him across the threshold."  *Id*. at 15555.  In particular, "[f]ar from the incorrect zip code, Robins complain[ed] of misinformation about his education, family situation, and economic status, inaccurate representations that could affect his fortune in the job market."  *Id*. at 1556.

[4] At oral argument, Plaintiff's counsel stipulated that he had no information one way or the other as to whether Plaintiff might have acted differently had Lyft made the required disclosures in the required format.

United States District Court
Northern District of California

consent to a background check as part of the defendant's hiring process did not meet the

requirements of the FCRA because extraneous information, along with required disclosures, was

contained in the document.  2016 WL 3182675, at * 1.  The plaintiff was ultimately hired, but she

alleged that her "privacy and statutory rights" were violated.  *Id*.  The court disagreed, finding that

under *Spokeo*, there was no injury in fact and that the plaintiff had alleged only a bare procedural

violation.[5]  *Id*. at *4.

Similarly, in  *Larroque v. First Advantage LNS Screening Solutions, Inc*., Judge Corley, of

this Court,  found that the plaintiff lacked Article III standing to assert a claim under the FCRA

against a company (Pacific) that had provided background information to a potential employer

where it was undisputed that the employer disclosed to the plaintiff in writing that it was going to

conduct a background check, she provided written authorization for the employer to obtain a

background report, that the report did not contain any adverse information about her, and she was

ultimately hired by that employer.  2016 WL 4577257, at *4-5.  The plaintiff alleged that Pacific

had violated the FCRA by providing the potential employer with a background report without first

verifying that the employer had complied with the disclosure and authorization requirements of

the FCRA.  *Id*. at *1.

Like Plaintiff here, the plaintiff in *Larroque* alleged that her privacy rights had been

violated, borrowing heavily from a decision by the United States District Court for the Eastern

District of Virginia,  *Thomas v. FTS USA, LLC*, No. 13-cv-825, 2016 WL 365878 (E.D. Va. June

30, 2016).  *See* Opposition at 13 (citing *Thomas* for the proposition that the FCRA creates

"substantive informational and privacy rights, not mere procedural rights"). The court rejected the

plaintiff's assertion that her privacy rights had been violated and distinguished *Thomas*, reasoning

as follows:

---

[5] Plaintiff argues that *Smith* was wrongly decided and therefore should not be followed because
the court based its conclusion on the plaintiff's admission that she did not suffer a "concrete
consequential damage."  Opposition at 12 (quoting *Smith*, 2016 WL 3182675, at *4).  According
to Plaintiff, the *Smith* court implicitly held that "informational injury or intrusion upon privacy is
not sufficient without a showing of tangible injury or actual damages," a holding that is
inconsistent with *Spokeo*.  The Court finds no such holding in *Smith*.  Rather, the court in that
case, like this Court, found that the alleged injury to privacy was not sufficiently concrete to
satisfy the requirements of *Spoke*, as discussed further below.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11

In *Thomas,* the plaintiff alleged that his former employer procured his and other class members' consumer reports without first providing the required written disclosure or obtaining the consumers' written consent, as required by FCRA § 1681b(b)(2). [2016 WL 365878,] at *1. The plaintiff later learned that his employer had received his consumer report when he was denied continued employment based upon information contained in the report—which included numerous felony convictions that were incorrectly attributed to him. *Id*. at *3. The court certified a class of all persons in the United States who had applied for employment with the defendants (1) where the defendants failed to provide written disclosure to the applicant that they intended to obtain a consumer report for employment purposes, as required by 15 U.S.C. § 1681b(b)(2)(A)(i), and (2) where the defendants failed to obtain proper written consent from the applicant, as required by 15 U.S.C. § 1681b(b)(2)(A)(ii). *Id*. at *1. After *Spokeo* was issued, the defendants argued that the plaintiff and other class members lacked standing because they had not alleged a concrete injury. *Id*. at *2. The court, however, rejected this argument, holding that the "unauthorized disclosure [of] personal information constitutes an invasion of the statutory of right to privacy and a concrete injury sufficient to confer Article III standing." *Id*. at *11.

12
13
14
15
16
17
18
19
20

Here, there was no "unauthorized disclosure" of Plaintiff's information as in *Thomas*—to the contrary, before Pacific obtained her credit report from Defendant, she expressly consented in writing to "the release of a credit report and/or investigative consumer report concerning me by a credit reporting agency [*i.e.* Defendant]" and authorized Pacific's use of her reports as part of its evaluation of her employment application. (Dkt. No. 36 at 4-5 (Ex. 1).) Plaintiff therefore agreed to the release of her private information, eliminating any argument that her privacy was somehow invaded. Indeed, because of her provided consent, Plaintiff does not, and cannot, allege the same statutory violations that the court in *Thomas* found constituted an invasion of the plaintiff's right to privacy; whereas the court found that "the rights created by § 1681b(b)(2) are substantive rights," 2016 WL 3653878, at *11, Plaintiff here alleges only that Defendant did not comply with the procedural requirements of Section 1681b(b)(1).

21
22
23

2016 WL 4577257, at *4–5 (N.D. Cal. Sept. 2, 2016). The Court finds that the reasoning in *Larroque* is persuasive and for the same reasons expressed in that case rejects Plaintiff's assertion that he has established standing on the basis that he alleges violations of his privacy rights.

24
25
26
27
28

At oral argument, Plaintiff argued that invasion of privacy is an injury that traditionally has been recognized and that he has established such an injury for the purposes of Article III standing based on his allegation that the authorization he gave Lyft to obtain his personal information was not *proper*. Plaintiff was not, however, able to cite any authority in support of this proposition and the Court has not found any. It is true that under common law a consent to disclosure obtained by

8

United States District Court
Northern District of California

1   fraud or deceit may result in an invasion of privacy.  *See, e.g.,* Restatement (Second) of Torts §

2   652B (1977) (invasion of privacy occurs where an individual is "compel[ed] . . . by a forged court

3   order to permit an inspection of his personal documents").  But no such conduct is alleged here.

4        The Court also rejects Plaintiff's argument that he has alleged an "informational injury"

5   that is sufficiently concrete to meet the requirements of *Spokeo*.  In *Spokeo*, the Court "implicitly

6   recognized" that certain types of "informational" injuries are "sufficient to support Article III

7   standing." *Larson v. Trans Union*, LLC, No. 12-CV-05726-WHO, 2016 WL 4367253, at *3 (N.D.

8   Cal. Aug. 11, 2016) (citing *Spokeo*, 136 S. Ct. 1549-50).  In particular, the Court stated that "the

9   violation of a procedural right granted by statute can be sufficient in some circumstances to

10  constitute injury in fact.  In other words, a plaintiff in such a case need not allege any additional

11  harm beyond the one Congress has identified."  *Id*. at 1549-50 (citing *Federal Election Comm'n v.*

12  *Akins*, 524 U.S. 11, 20–25 (1998); *Public Citizen v. Department of Justice*, 491 U.S. 440, 449

13  (1989).  The Court described the holding in *Akins* as "confirming that a group of voters' 'inability

14  to obtain information' that Congress had decided to make public is a sufficient injury in fact to

15  satisfy Article III."  *Id*.  According to the Court, *Public Citizen* held that "two advocacy

16  organizations' failure to obtain information subject to disclosure under the Federal Advisory

17  Committee Act 'constitutes a sufficiently distinct injury to provide standing to sue.'"  *Id*.

18       The case law is not consistent with respect to how broadly to read the language in *Spokeo*

19  with respect to informational injury.   The Eleventh Circuit adopted a broad reading of this

20  language in *Church v. Accretive Health, Inc*., No. 15-15708, 2016 WL 3611543 (11th Cir. July 6,

21  2016).  In that case, the plaintiff received a letter from defendant, on behalf of a hospital, stating

22  that she owed a debt to the hospital.  *Id*. at 1.  The letter did not include certain disclosures that are

23  required under the FDCPA.  *Id*.  Although the plaintiff did not allege that she had suffered actual

24  damages as a result of the failure to include these disclosures, she did allege that she "was very

25  angry" and "cried a lot" when she received the letter.  *Id*.  The court addressed whether these

26  allegations were sufficient to demonstrate a concrete injury under *Spokeo* and found that they were

27  because "[t]he invasion of Church's right to receive the disclosures is not hypothetical or

28  uncertain:  Church did not receive information to which she alleges she was entitled."  *Id*. at *3.

United States District Court
Northern District of California

In reaching this conclusion, the *Church* court likened the facts of the case to those in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982).  *Havens* was cited by Justice Thomas in his concurrence in *Spokeo* to illustrate the point that "[a] plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right."  *Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring).  In *Havens*, the Court found that a black "tester" who was given false information about the availability of housing based on her race had standing to assert a claim under Section 804(d) of the Fair Housing Act, reasoning as follows:

> A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d).

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982).  The *Church* court concluded that the failure to include the required disclosures in the letter that was sent to the plaintiff in that case was comparable:  "Just as the tester-plaintiff had alleged injury to her statutorily-created right to truthful housing information, so too has Church alleged injury to her statutorily created right to information pursuant to the FDCPA."  2016 WL 3611543, at *3.

A federal district court in New York rejected the reasoning of the Eleventh Circuit in *Church*, however, in *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285 PKC AKT, 2016 WL 4099109 (E.D.N.Y. Aug. 2, 2016).  In that case, the plaintiff asserted claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, based on allegations that the defendant, a loan servicer, had not provided the plaintiff with information about the servicing of his loan that RESPA requires be disclosed in so-called "Hello/Goodbye" letters notifying a borrower of a change in the loan servicer.  *Id*. at *6.  The plaintiff conceded he had suffered no actual damages as a result of the failure to send the letter with these disclosures.  *Id*.  The court addressed whether this violation was a "bare procedural violation" under *Spokeo* or instead, the sort of statutory violation that is sufficient to establish Article III standing on its own, examining the two cases cited in *Spokeo* as examples of the latter, *FEC v. Akins* ("*Akins*"), 524 U.S. 11 (1998), and *Public*

10

1    *Citizen v. U.S. Dep't of Justice* ("*Public Citizen*"), 491 U.S. 440 (1989)).

2        In *Akins*, the Court held that a group of voters had standing to challenge a determination by

3    the Federal Election Commission (FEC) that the American Israel Public Affairs Committee

4    ("AIPAC") was not a "political committee" as defined by the Federal Election Campaign Act of

5    1971 ("FECA"), 86 Stat. 11, as amended, 2 U.S.C. § 431(4).  524 U.S. at 14.   As a result of the

6    FEC's determination, AIPAC was not required to make disclosures regarding its "membership,

7    contributions, and expenditures that FECA would otherwise require."  *Id*. at 13.  The Court found

8    that the plaintiffs had standing under Article III, reasoning as follows:

9                The "injury in fact" that respondents have suffered consists of their
10               inability to obtain information—lists of AIPAC donors (who are,
             according to AIPAC, its members), and campaign-related
11               contributions and expenditures—that, on respondents' view of the
             law, the statute requires that AIPAC make public. There is no reason
12               to doubt their claim that the information would help them (and
             others to whom they would communicate it) to evaluate candidates
13               for public office, especially candidates who received assistance from
             AIPAC, and to evaluate the role that AIPAC's financial assistance
14               might play in a specific election. Respondents' injury consequently
             seems concrete and particular. Indeed, this Court has previously held
15               that a plaintiff suffers an "injury in fact" when the plaintiff fails to
             obtain information which must be publicly disclosed pursuant to a
16               statute. *Public Citizen v. Department of Justice*, 491 U.S. 440, 449,
             109 S.Ct. 2558, 2564, 105 L.Ed.2d 377 (1989) (failure to obtain
17               information subject to disclosure under Federal Advisory Committee
             Act "constitutes a sufficiently distinct injury to provide standing to
18               sue").

19   *Id.* at 21.

20        In *Public Citizen*, the plaintiffs, Washington Legal Foundation and Public Citizen,

21   challenged the United States Department of Justice's use of confidential reports prepared by the

22   American Bar Association's Standing Committee on Federal Judiciary ("ABA Committee") to

23   evaluate nominees for judgeships.  491 U.S. at 443.  The plaintiffs asserted that the ABA

24   Committee was an "advisory committee" under the Federal Advisory Committee Act ("FACA")

25   and therefore was required to make its minutes, records, and reports public. *Id.*  at 447–48.  The

26   Court found that the plaintiffs had standing under Article III because they sought "access to the

27   ABA Committee's meetings and records in order to monitor its workings and participate more

28   effectively in the judicial selection process" and had been denied that information.  *Id*. at 449.  The

United States District Court
Northern District of California

11

Court held that "[a]s when an agency denies requests for information under the Freedom of Information Act, refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." *Id.*

The court in *Dolan* found significant that "both *Akins* and *Public Citizen* involved statutory rights intended to protect and promote public interests that, by their nature, are intangible and diffuse, and would be rendered wholly unenforceable were intangible injury, or bare procedural violations, categorically insufficient to confer standing." 2016 WL 4099109, at *4. The court found that another section of RESPA that was *not* asserted in *Dolan* – Section 2607, which prohibits "any fee, kickback, or thing of value" in exchange for a referral "incident to or a part of a real estate settlement service involving a federally related mortgage loan," was aimed at addressing a similar public interest and could give rise to standing based only on a statutory violation. *Id*. at *4-5. On the other hand, the court concluded, the provision that the plaintiff in *Dolan* alleged was violated, Section 2605, which required that certain information be disclosed to buyers when their loans changed servicers, did "not implicate the type of diffuse, intangible injury at issue in *Akins* and *Public Citizen*, but rather [sought] to redress actual damages caused by the failure of one private party, *i.e.,* a loan servicer, to provide specific information to another private party, i.e., a borrower." *Id*. at *5. Consequently, the court held, a plaintiff alleging a violation of Section 2605 required more than a mere violation to establish Article III standing. *Id.*

In a footnote, the *Dolan* court rejected the Eleventh Circuit's decision in *Young*, stating as follows:

> The Court is aware of the Eleventh Circuit's recent decision in *Church v. Accretive Health, Inc*., No. 15-15708, 2016 U.S. App. LEXIS 12414 (11th Cir. July 6, 2016), in which the Eleventh Circuit concluded that a plaintiff had standing to assert claims under the Fair Debt Collection Practices Act ("FDCPA") simply by alleging that she had not received all information to which she was entitled under the statute, even in the absence of any allegations of "tangible economic or physical harm." *Id*. at *10–11. The Eleventh Circuit reasoned that "the Supreme Court has made clear [that] an injury need not be tangible to be concrete," and that the injury of not receiving a disclosure to which someone is entitled was "one that Congress has elevated to the status of a legally cognizable injury through the FDCPA." *Id*. at 11 & n.2 (holding that this was not a "procedural violation," but the violation of a "substantive right to receive certain disclosures"). The Court is not bound by this decision, and respectfully disagrees with it, based on this Court's

1

2

3

4

5

6

conclusion that the cases cited in *Spokeo* as examples of intangible harm sufficient to confer standing, *i.e.*, *Akins* and *Public Citizen*, involved interests of much greater and broader significance to the public than those at issue in *Church* and, more relevantly, under Section 2605 of RESPA. In short, the Court rejects the view that *Spokeo* established the proposition that every statutory violation of an "informational" right "automatically" gives rise to standing. See *Spokeo*, 136 S. Ct. at 1549 (holding that plaintiff alleging FCRA violation "could not ... allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III").

7

*Id.* at *6 n. 7.

8

Turning once again to the alleged violations of the FCRA in this case, the Court notes that

9

*prior* to *Spokeo*, courts had held that failure to provide disclosures that are required under the

10

FCRA amounted to an informational injury that gave rise to Article III standing.  For example, in

11

*Manuel v. Wells Fargo Bank, Nat. Ass'n*, the court expressly held that a plaintiff who alleged he

12

did not receive the required FCRA disclosures in a separate document, in violation of 15 U.S.C. §

13

1681b(b)(2)(A),  was "clearly alleging an informational injury—while he did receive a type of

14

information, it was not the type of information that he was entitled to under the FCRA."  123 F.

15

Supp. 3d 810, 817 (E.D. Va. 2015).  In particular, the court held, "[t]he allegations that Defendant

16

failed to provide [the] information [required under the FCRA], or that they provided the

17

information after it was required are sufficient to posit 'an invasion of a legally protected interest

18

which is (a) accurate and particularized and (b) actual or imminent, not conjectural or

19

hypothetical.'"  *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. at 560–61). The undersigned

20

concludes that in the wake of *Spokeo*,  *Manuel* cannot be read to stand for the  broad proposition

21

that violation of a disclosure requirement under the FCRA, by itself, is sufficient to confer Article

22

III standing on a plaintiff. [6]

23

The Court also agrees with the *Dolan* court that *Church* appears to be inconsistent with

24

*Spokeo* to the extent that the cases cited in *Spokeo* (*Akins* and *Public Citizen*) implicated interests

25

26

27

28

United States District Court
Northern District of California

---

[6] Notably, while the court's discussion of standing in *Manuel* focuses entirely on the fact of the statutory violation to establish injury-in fact, the plaintiff had, in fact, been denied employment based on information obtained by the employer in the consumer reports at issue in that case. Therefore, the *holding* of *Manuel* appears to be consistent with *Spokeo* even if some of the court's reasoning appears to be inconsistent with *Spokeo*.

13

of broad significance to the public, whereas the alleged failure to disclose at issue in *Church* did not.  Further, the undersigned does not agree with the *Church* court that the failure to include certain disclosures in the letter at issue in that case resulted in an injury that was comparable to the injury in *Havens*, where the plaintiffs were subject to discriminatory conduct that was part of a practice by the defendants of steering racial minorities away from certain neighborhoods.  455 U.S. at 376.   Therefore, the Court declines to adopt the Eleventh Circuit's broad reading of *Spokeo* and does not follow *Church* here.

In sum, the Court concludes that under *Spokeo* and the specific facts of this case, Plaintiff has failed to establish that he has met Article III's injury-in-fact requirement.

## IV.    CONCLUSION

For the reasons stated above, the Motion is GRANTED.  Accordingly, the Complaint is dismissed without prejudice to refiling this action in state court.[7]

**IT IS SO ORDERED.**

Dated: October 5, 2016

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

---

[7] The parties agree that where a federal court lacks subject matter jurisdiction over an action due to lack of Article III standing, dismissal without prejudice is appropriate.

14